FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2026 APR 24 PM03 16
CAROL L. MICHEL, CLERK

# FELONY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

## INDICTMENT FOR CONSPIRACY TO COMMIT WIRE FRAUD, CONSPIRACY TO COMMIT MONEY LAUNDERING, AGGRAVATED IDENTITY THEFT, AND INTERSTATE COMMUNICATION OF A THREAT

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | * | CRIMINAL NO. | **26-112** |
| v. | * | SECTION: | **SECT. PMAG.3** |
| **ALBERT WEBER, JR.** | * | VIOLATIONS: | 18 U.S.C. § 1343 |
| **CYNTRELLE LASH** | | | 18 U.S.C. § 1349 |
| | * | | 18 U.S.C. § 1956(a)(1) |
| | | | 18 U.S.C. § 1956(h) |
| | * | | 18 U.S.C. § 1028A |
| | | | 18 U.S.C. § 875 |
| * | * | * | 18 U.S.C. § 2 |

The Grand Jury charges that:

### COUNT 1
### (Conspiracy to Commit Wire Fraud)

### A.    AT ALL TIMES MATERIAL HEREIN:

#### The Defendants

1.    The defendant, **ALBERT WEBER, JR. ("WEBER")**, resided in or around Harvey, Louisiana, which is in the Eastern District of Louisiana.

√ Fee   USA
___ Process_____
X Dkм_____
___ CtRmDep_____
___ Doc.No._____

2. **WEBER** was the manager of a Harvey company, A. Weber Music & Sports Entertainment, LLC ("Weber Music & Sports"), registered with the Louisiana Secretary of State on or about May 20, 2021.

3. **WEBER** maintained financial accounts at Capital One Bank ("Capital One") and CashApp, a money transfer service.

4. The defendant, **CYNTRELLE LASH ("LASH")**, resided in or around Metairie, Louisiana, which is in the Eastern District of Louisiana.

5. **LASH** maintained financial accounts in her name at JPMorgan Chase Bank, N.A. ("Chase Bank") and Navy Federal Credit Union ("Navy FCU").

6. **LASH** was the mother of **WEBER**'s child.

7. **WEBER**'s cellular phone number was saved in **LASH**'s cellular phone under the contact name "partner in crime."

8. **LASH** was the manager of a Metairie company, IPrestigio, LLC ("IPrestigio"), registered with the Louisiana Secretary of State on or about April 22, 2019. IPrestigio changed its name to IPrestige, LLC on or about June 24, 2020.

9. **LASH** maintained financial accounts in the name of IPrestigio at Gulf Coast Bank and Trust ("Gulf Coast Bank"), Navy FCU, and Hancock Whitney Bank ("Hancock Whitney").

*The Victims & Related Parties*

10. Football Player 1 was a college athlete who finished his NCAA career in 2017 and was predicted in 2017 to be a top draft pick in the NFL.

11. Basketball Player 1 was a college athlete who finished his NCAA career in 2021 and was predicted in 2021 to be a top draft pick in the NBA.

12. Basketball Player 2 was a college athlete who finished his NCAA career in 2023 and was predicted in 2023 to be a top draft pick in the NBA.

13. Football Player 2 was a college athlete who finished his NCAA career in 2025 and was predicted in 2025 to be a top draft pick in the NFL. (Collectively, Football Player 1, Football Player 2, Basketball Player 1, and Basketball Player 2 are the "Draft Athlete Victims.")

14. Victim Lender 1, Victim Lender 2, and Victim Lender 3 (collectively, the "Victim Lenders") were businesses and individuals who provided loans and financing to athletes.

15. Victim 4 was a businessperson who helped basketball players travel to foreign countries to play basketball games, including in a European league during the NBA offseason, so aspiring and professional basketball players could gain exposure to teams and coaches from professional leagues.

16. Victim 5 was a sports agent who represented basketball players who sought to travel on the overseas trips arranged by Victim 4.

17. Basketball Player 3 was a Texas-based aspiring professional athlete who sought to play in a professional league outside of the United States.

18. Basketball Player 4 was a Florida-based aspiring professional athlete who sought to play in a professional league outside of the United States.

B. **THE CONSPIRACY:**

Beginning on a date unknown, but at least as early as 2016, and continuing through the date of this indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **ALBERT WEBER JR.** and **CYNTRELLE LASH**, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, with the intent to defraud, to knowingly devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property

3

by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, transmitting and causing to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

C.     **PURPOSE OF THE CONSPIRACY:**

It was a purpose of the conspiracy for **WEBER, LASH,** and others to unlawfully enrich themselves by, among other things:

1.     Obtaining money by defrauding the Victim Lenders into providing funds to **WEBER, LASH,** and their coconspirators and associates;

2.     Moving the proceeds of the scheme between accounts and through cash withdrawals to conceal and disguise the nature, source, ownership, and control of the proceeds of the scheme.

3.     Concealing the scheme by submitting false and fraudulent documents to the Victim Lenders, notaries, and others involved in the transactions in which the defendants impersonated athletes and their relatives, and misusing personal identifying information of the impersonated athletes and their relatives.

D.     **MANNER AND MEANS OF THE CONSPIRACY:**

The manner and means by which **WEBER, LASH,** and their coconspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

1.     **WEBER, LASH,** and their coconspirators defrauded the victims by using multiple identities and causing victims to enter into fake transactions through which the victims would transfer funds to accounts controlled by the defendants and their coconspirators.

4

2.      **WEBER, LASH**, and their coconspirators used multiple versions of their scheme, described below. One version of the scheme involved using fake and stolen identities to deceive the Victim Lenders into believing that they were making loans and transferring funds to basketball and football players and their family members, when in fact the funds went to the defendants and their coconspirators. Another version of the scheme involved using fake and stolen identities to defraud athletes and businesspeople into sending funds to the defendants and their coconspirators for fake basketball-related trips overseas.

*Fraudulent Loans*

3.      **WEBER, LASH**, and their coconspirators created fake documents, deceptively named email addresses, and fake driver's licenses, which they used to enter into transactions, forge documents, create accounts, and obtain funds as if they were the Draft Athlete Victims and their family members.

4.      Beginning as early as 2016 and continuing through at least 2025, **WEBER, LASH**, and their coconspirators impersonated the Draft Athlete Victims and their family members in text messages, meetings, and telephone calls.

5.      **WEBER, LASH**, and their coconspirators defrauded the Victim Lenders into sending funds to accounts under their control purportedly for the benefit of the Draft Athlete Victims and their family members.

6.      **WEBER, LASH**, and coconspirators acting at **WEBER**'s direction moved the funds from the Victim Lenders through multiple accounts and into cash to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the scheme.

7. **WEBER, LASH,** and their coconspirators then spent the funds for their personal purposes unrelated to the Draft Athlete Victims and their family members without their knowledge or authorization.

*Football Player 1*

8. Beginning in or around 2016, the coconspirators impersonated Football Player 1 to defraud a victim lender. The coconspirators defrauded the victim lender into making two loans to Football Player 1. The coconspirators falsely told the victim lender that the first loan was for Football Player 1 to buy out his contract with his sports agent, and the second loan was to pay off individuals the coconspirators described as "street guys" who had loaned Football Player 1 money during his years as a college athlete.

9. Acting at the direction of the coconspirators, the victim lender sent several transfers totaling approximately $300,000, to three accounts not in Football Player 1's name. One of the account owners was an associate of **WEBER** who received a series of wire transfers into bank accounts under the associate's control between in or around December 2016 and January 2017. Following receipt of the wire transfers, the associate withdrew most of the funds in cash and gave it to **WEBER**.

*Victim Lender 1 & Basketball Player 1*

10. Beginning in or around 2021, the coconspirators impersonated Basketball Player 1 and his father. Using deceptively named email addresses created for the scheme, the coconspirators defrauded Victim Lender 1, who believed he was communicating with Basketball Player 1 and his father.

11. In response to Victim Lender 1's attempts to vet Basketball Player 1 and his father, the coconspirators emailed Victim Lender 1 the name, date of birth, social security number,

driver's license number, and address of the father of Basketball Player 1. The coconspirators also signed a forged agreement on behalf of Basketball Player 1 concerning approximately $950,000 in funds, after which the coconspirators sent Victim Lender 1 a copy of the forged agreement notarized in Orleans Parish.

12.     The coconspirators transferred the funds they received from Victim Lender 1 to accounts controlled by the coconspirators. For example, following a wire transfer on or about June 11, 2021, of approximately $50,000 from Victim Lender 1's account to **LASH**'s IPrestigio account at Gulf Coast Bank, **LASH** withdrew approximately $45,000 in cash.

13.     On or about July 1, 2021, Victim Lender 1 made three wire transfers, totaling approximately $300,000, from his bank account to **LASH**'s IPrestigio's Gulf Coast Bank account, **LASH**'s Chase Bank account, and an associate's Capital One Bank account. From these funds, between on or about July 2 and July 8, 2021, three separate cash withdrawals, each $30,000, were made from IPrestigio's Gulf Coast Bank account. From these funds, in or around July 2021, **LASH** made two transfers to **WEBER**'s CashApp account, totaling approximately $4,000, and four cash withdrawals, totaling approximately $84,000, from **LASH**'s Chase Bank account.

14.     On or about July 26, 2021, the coconspirators emailed Victim Lender 1 a forged letter purporting to be a line of credit letter on Capital One Bank's letterhead, falsely confirming that Basketball Player 1 would be provided a $20 million line of credit by August 2, 2021.

15.     In or around August 2021, the coconspirators requested another $1 million loan from Victim Lender 1 for Basketball Player 1. On or about October 11, 2021, the coconspirators sent Victim Lender 1 notarized financial documents forged in the name of Basketball Player 1, using a fake return address in Harvey, Louisiana, and the coconspirators emailed Victim Lender 1

fabricated driver's licenses (with correct information but photographs taken from another source) for Basketball Player 1 and his father.

16. In total, the coconspirators defrauded Victim Lender 1 of approximately $850,000 by impersonating Basketball Player 1 and his father.

*Victim Lender 2 & Basketball Player 2*

17. Beginning in or around 2023, the coconspirators impersonated Basketball Player 2 and his father. Using deceptively named email addresses created for the scheme, the coconspirators defrauded Victim Lender 2, who believed he was communicating with Basketball Player 2.

18. The coconspirators also defrauded other victim lenders, including by impersonating Basketball Player 2's father and by electronically signing documents in the name of Basketball Player 2 from IP addresses that **LASH** previously used to sign a lease and that **WEBER** previously used to access his CashApp account.

19. On or about June 8, 2023, the coconspirators sent a forged financial agreement, signed on behalf of Basketball Player 2, to Victim Lender 2. The coconspirators sent Victim Lender 2 a Form W-9, dated March 18, 2023, with Basketball Player 2's name, address, social security number, and signature, as well as a copy of Basketball Player 2's driver's license.

20. Using documents forged in the name of Basketball Player 2, the coconspirators established an account in the name of Basketball Player 2. On or about June 9, 2023, Victim Lender 2 sent approximately $750,000 to the account in Basketball Player 2's name. In the following weeks, the coconspirators transferred over $300,000 of those funds to **LASH**'s Navy FCU account and then to **WEBER**'s Capital One Bank account.

21. On or about August 17, 2023, the coconspirators signed a wire funds authorization using Basketball Player 2's name and signature. On or about August 18, 2023, approximately

8

$1,085,000 was transferred via wire from Victim Lender 2's bank account to the account in the name of Basketball Player 2. On or about August 18, 2023, the coconspirators signed a letter under Basketball Player 2's name authorizing a transfer of $430,000 from Basketball Player 2's account to **LASH**'s Hancock Whitney account for IPrestigio, which **LASH** opened earlier that month. On or about August 22, 2023, approximately $430,000 was transferred from Basketball Player 2's account to IPrestigio's Hancock Whitney account.

22.    In total, the coconspirators defrauded Victim Lender 2 of approximately $1,835,000 by impersonating Basketball Player 2. The coconspirators also defrauded other victim lenders of approximately $332,139 by impersonating Basketball Player 2 and his father.

*Victim Lender 3 & Football Player 2*

23.    Beginning in or around 2025, the coconspirators impersonated Football Player 2 and his father. Using deceptively named email addresses created for the scheme, the coconspirators defrauded Victim Lender 3, who believed he was communicating with Football Player 2 and his father.

24.    On or about February 24, 2025, Victim Lender 3 transferred approximately $150,000 to **LASH**'s IPrestigio account at Navy FCU.

25.    On or about March 5, 2025, **WEBER** impersonated Football Player 2's father and forged his signature on a Deed of Trust for the father's property in Texas in connection with a $175,000 note, which **WEBER** had notarized in Jefferson Parish.

26.    On or about March 16, 2025, **WEBER** impersonated Football Player 2's father and forged his signature on a second Deed of Trust for the father's same property in Texas in connection with a $100,000 note, which **WEBER** again had notarized in Jefferson Parish.

9

27.     On or about March 17, 2025, the coconspirators signed a promissory note in the name of Football Player 2.

28.     In or around March 2025, Victim Lender 3 transferred approximately $100,000 to **LASH**'s IPrestigio's Navy FCU account, from which the coconspirators then transferred approximately $15,000 to an account controlled by an associate of **WEBER**.

29.     In or around May of 2025, the coconspirators requested another loan of $200,000 from Victim Lender 3, purportedly for Football Player 2.

30.     In total, the coconspirators defrauded Victim Lender 3 of approximately $250,000 by impersonating Football Player 2.

*Fake Overseas Trip*

31.     **WEBER** used the alias "Chris Robert" to approach Victim 4 as part of a fake overseas trip scheme. **WEBER** told Victim 4 that he trained basketball players and convinced Victim 4 to help **WEBER** organize a trip for basketball players to Portugal in September 2025.

32.     **WEBER** defrauded Basketball Player 3, Basketball Player 4, and Victim 5 to send at least $45,000 to associates of **WEBER** in connection with the fake trip.

33.     When Victim 4 informed **WEBER** that Victim 4 would report **WEBER**, along with two of his associates who received money for the fake trip, to law enforcement, **WEBER** threatened Victim 4 and Victim 5. **WEBER** told Victim 4 that **WEBER** had associates in the same town as Victim 5 who would find Victim 5 and physically harm him. **WEBER** made these threats by telephone and through text messages. **WEBER** also threatened Victim 4 and Victim 5 that **WEBER** and his associates would physically harm Victim 4 and Victim 5 if **WEBER** did not receive another $7,500 from Victim 5 for the fake overseas trip.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (Conspiracy to Commit Money Laundering)

A.    **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Count 1 are re-alleged and incorporated as if fully set forth herein.

B.    **THE CONSPIRACY:**

Beginning at a time unknown, but at least as early as 2016, and continuing through the date of this indictment, in the Eastern District of Louisiana, and elsewhere, the defendants, **ALBERT WEBER JR.** and **CYNTRELLE LASH**, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, and agree with each other to commit offenses against the United States, to wit, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3 THROUGH 8
### (Aggravated Identity Theft)

A.    **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Count 1 are re-alleged and incorporated as if fully set forth herein.

11

B.    **THE OFFENSES:**

On or about the dates listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **ALBERT WEBER JR.** and **CYNTRELLE LASH**, did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, as detailed in Count 1, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

| Count | Defendant(s) | Date | Description |
|-------|-------------|------|-------------|
| 3 | WEBER | 6/9/2021 | Name and signature of Basketball Player 1 on a contract increasing a $750,000 loan, from Victim Lender 1 to Basketball Player 1, by an additional $200,000, for a new total of $950,000. |
| 4 | WEBER | 3/18/2023 | Name, address, social security number, and signature of Basketball Player 2 on a Form W-9, as well as Basketball Player 2's driver's license. |
| 5 | WEBER | 8/17/2023 | Name and signature of Basketball Player 2 on wire funds authorization transferring $430,000 from an account in Basketball Player 2's name to an IPrestigio account in LASH's name. |
| 6 | WEBER | 3/5/2025 | Name, address, and signature of father of Football Player 2 on a deed of trust for a $175,000 note. |
| 7 | WEBER | 3/17/2025 | Signature of Football Player 2 on a promissory note. |
| 8 | WEBER LASH | 5/13/2025 | Signatures, names, address, and driver's licenses of two co-borrowers in financial documents concerning loans to Football Player 2 and his father. |

## COUNT 9
### (Interstate Communications of a Threat)

A.    **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Count 1 are re-alleged and incorporated as if fully set forth herein.

12

B.    **THE OFFENSE:**

On or about December 8, 2025, in the Eastern District of Louisiana and elsewhere, the defendant, **ALBERT WEBER JR.**, knowingly and willfully did transmit in interstate commerce from Louisiana to Oregon, a communication to Victim 4, and the communication threatened to injure Victim 4 and Victim 5, specifically, that **WEBER** would "knock [Victim 5's] head off" if they contacted anyone about **WEBER's** fraudulent scheme, and that **WEBER** was going to "find both of [Victim 4 and Victim 5]," especially Victim 5, "who stirred up this shit," and that **WEBER** had "gangsters right there in [Victim 5's] town."

All in violation of Title 18, United States Code, Section 875(c).

## COUNT 10
### (Interstate Communications of a Threat)

A.    **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Count 1 are re-alleged and incorporated as if fully set forth herein.

B.    **THE OFFENSE:**

On or about March 5, 2026, in the Eastern District of Louisiana and elsewhere, the defendant, **ALBERT WEBER JR.** knowingly and willfully did transmit in interstate commerce from Louisiana to Ohio, a communication to Victim 4, and the communication contained a threat to injure Victim 5, specifically, **WEBER** stated that he had "gangstas right in [Victim 5's] town" who wanted to find Victim 5 and who **WEBER** had previously said would "knock [Victim 5's] head off," and that Victim 4 and Victim 5 should not contact others in their attempt to recover the funds that **WEBER** had as a result of his scheme.

All in violation of Title 18, United States Code, Section 875(c).

13

## NOTICE OF FORFEITURE

1.      The allegations of Counts 1, 2, 9, and 10 of this Indictment are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.      As a result of the offenses alleged in Counts 1, 9, and 10, the defendants, **ALBERT WEBER JR.** and **CYNTRELLE LASH**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses, including but not limited to:

2018 Bentley Bentayga, VIN SJAAC2ZVXJC018187.

3.      As a result of the offense alleged in Count 2, the defendants, **ALBERT WEBER JR.** and **CYNTRELLE LASH**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in said offense, or any property traceable to such property.

4.      If any of the above-described property, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty; the United States shall seek a money judgment and, pursuant to Title 21, United States

14

Code, Section 853(p), forfeiture of any other property of the defendants up to the value of said property.

DAVID I. COURCELLE
UNITED STATES ATTORNEY

NICHOLAS D. MOSES
CHRISTINE M. CALOGERO
Assistant United States Attorneys

New Orleans, Louisiana
April 24, 2026

15

FORM OBD-34

No.

# UNITED STATES DISTRICT COURT
__Eastern__ *District of* ___Louisiana___
___Criminal___ *Division*

## THE UNITED STATES OF AMERICA

vs.

**ALBERT WEBER, JR.**
**CYNTRELLE LASH**

## INDICTMENT FOR CONSPIRACY TO COMMIT WIRE FRAUD, CONSPIRACY TO COMMIT MONEY LAUNDERING, AGGRAVATED IDENTITY THEFT, AND INTERSTATE COMMUNICATION OF A THREAT

| VIOLATIONS: | 18 U.S.C. § 2 | 18 U.S.C. § 1349 |
| --- | --- | --- |
| | 18 U.S.C. § 875 | 18 U.S.C. § 1956(a)(1) |
| | 18 U.S.C. § 1028A | 18 U.S.C. § 1956(h) |
| | 18 U.S.C. § 1343 | |

*Filed in open court this 24ᵗʰ day of  April A.D. 2026.*

_____
*Clerk*

*Bail, $* _____

**NICHOLAS D. MOSES**
**Assistant United States Attorney**